727 So.2d 266 (1999)
McFARLAND & SON, INC., etc., et al., Appellant/Cross-Appellees,
v.
Royal Mende BASEL and Steven Kane, etc., Appellees/Cross-Appellants.
Nos. 98-614, 98-969.
District Court of Appeal of Florida, Fifth District.
January 15, 1999.
Rehearing Denied March 18, 1999.
*267 Michael V. Elsberry and Harry W. Lawrence of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellants/Cross-Appellees.
Edna L. Caruso and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and O. John Alpizar of *268 Alpizar, Ville, Torres & Camfield, Palm Bay, for Appellees/Cross-Appellants.
GOSHORN, J.
McFarland & Son, Inc. and Jonathan Queen (Defendants) appeal the final judgment rendered on the jury verdict issued in the negligence suit filed by Royal Basel and Steven Kane (Plaintiffs) as co-guardians of Mark Basel, a passenger in the car hit by a truck driven by Queen. Defendants assert numerous errors occurred in the course of the trial, one of which we find dispositive. Plaintiffs cross-appeal the denial of their motion for costs and fees under their offer of judgment.[1]
Jonathan Queen was driving an eighteen-wheel car carrier for his employer, McFarland & Son, Inc., at 2:00 a.m. on August 6, 1994. He was headed north on 1-95 and had just crossed over the Garden Street overpass in Titusville when he saw a 1984 Grand Prix parked across the right-hand lane and extending perhaps seven inches into the left lane. Later measurements showed the car was between 800 and 924 feet from the top of the overpass. According to Queen, the car's lights were off. He swerved to the left and braked, jack-knifed, and hit the car. The car driver, Jean Ann Basel, was killed instantly; her husband, Mark, was ejected from the car and suffered extreme permanent brain injury.
Mark's injuries left him without memory of the accident. Friends of the two testified Mark was living apart from Jean.[2] The night of the accident, the two coincidentally wound up at the same bar and left together in Jean's car. Blood tests showed both were legally drunk at the time of the accident. There is no explanation for how or why the two ended up parking at a 70-degree angle across I-95.
Plaintiffs filed a negligence suit against Jean's estate, Queen, and McFarland & Son, Inc. and later successfully moved to amend their complaint to add a count against McFarland & Son, Inc. for the negligent hiring, training, and supervision of Queen. We reverse because of the error in denying McFarland & Son, Inc.'s motion for directed verdict on this count.[3]
The evidence was simply insufficient to have gone to the jury on the issue of McFarland & Son, Inc.'s negligent hiring, training, and supervision of Queen. At trial, it was established that Queen had been driving for McFarland & Son, Inc. for two years prior to the accident without incident and that Queen had a valid commercial driver's license. Plaintiffs' expert discovered, however, that Queen had not completely filled out his application for employment with McFarland & Son, Inc. The Interstate Commerce Commission (ICC) regulations provide that a person "shall not drive" a commercial vehicle until the application for employment is completed. 49 C.F.R. § 391.21. McFarland & Son, Inc. allowed Queen to drive without forcing Queen to comply with this regulation. According to the expert, Queen should not have been driving the night of the accident, although the expert admitted the failure to fill out the application did not cause the accident. In fact, none of the matters which Queen failed to report would have disqualified him from driving for McFarland & Son, Inc.
The simple violation of a licensing statute, unless the violation can be shown to be directly related to the incident, is not proof of negligence. Brackin v. Boles, 452 *269 So.2d 540 (Fla.1984). Without proof of a causal connection between the regulatory restriction and the incident, the finding of liability based on a regulatory deficit is unsustainable. See Dorsett v. Dion, 347 So.2d 826 (Fla. 3d DCA 1977).
Plaintiffs assert there was evidence of negligent training, too, which would support the denial of the directed verdict on this count. They contend that McFarland & Son, Inc. knew Queen had never driven an eighteen-wheel rig before, yet only gave him a 50-mile road test and had him ride with another driver for three weeks before putting him on the road in his own rig. McFarland & Son, Inc. gave Queen no formal training on braking. The evidence showed that Queen locked his brakes one half second prior to impact, causing him to lose his ability to steer around the car.
Queen had only a few seconds to figure out how to avoid the emergency situation presented: a car parked at a 70-degree angle across the driving lane of an interstate highway at 2:00 a.m. at most 924 feet from the crest of an overpass. He chose to steer and brake to avoid the car, unfortunately locking the brakes in the process. There was no evidence that his action was that of an untrained driver, or even that training would have prevented Queen from responding as he did in this situation.
As to the supervision aspect, Plaintiffs assert McFarland & Son, Inc.'s failure to teach Queen how to properly fill out his driving logs led to the accident because Queen was falsifying his driving records. They state McFarland & Son, Inc. was aware Queen was not filling in his mileage and if McFarland & Son, Inc. had checked, it would have determined the mileage showed Queen was driving more hours than allowed. However, there is no nexus between improper bookkeeping and the accident. Even if Queen had not violated the ICC Reporting Regulations and even if McFarland & Son, Inc. had required Queen to properly maintain his logbook, the accident would have still occurred. The portion of the final judgment finding that McFarland & Son, Inc. was negligent in hiring, training, and supervising Queen is reversed.
Because our reversal necessitates a new trial, we comment on an additional argument made by Defendants. Defendants argued strenuously both here and below that it was error to allow Plaintiffs' experts to testify to the results of their accident simulations, which simulations were conducted with the exemplar car's headlights on. Defendants contend that just because the light switch was in the "on" position at the end of the crash and the bulb filaments may be consistent with the headlights having been on at the moment of impact, there is no basis to conclude the headlights were on the entire 8.4 seconds before the accident. We disagree. Defendants' argument goes to the weight of the evidence, not its admissibility. The fact that the headlights were on at the moment of impact raises the permissible inference they were on the 8.4 seconds it took Queen to reach the car after cresting the hill. See Detroit Marine Eng'g, Inc. v. Maloy, 419 So.2d 687 (Fla. 1st DCA 1982) (evidence that boat steering wheel was found underwater near the body leads to logical and permissible inference that decedent was holding the wheel when it broke and that the breaking of the wheel was the cause of death). Further, the court's conclusion as to the similarity of the experiment to the event is a matter within the court's discretion. Vitt v. Ryder Truck Rentals, Inc., 340 So.2d 962 (Fla. 3d DCA 1976). No abuse of discretion has been demonstrated.
Turning now to the cross-appeal of the denial of Plaintiffs' motion for fees and costs under their offer of judgment, Plaintiffs proposed settlement as follows:
COME NOW the Plaintiffs, ROYAL MENDE BASEL and STEVEN KANE as Co-Plenary Guardians of the person and property of MARK VICTOR BASEL, by and through their undersigned counsel, and pursuant to § 768.79, Florida Statutes, hereby serves this Offer of Judgment on Defendants, McFARLAND & SONS, INC., a foreign corporation, JONATHAN QUEEN, and BETTY ANN SWIFT, as Personal Representative of the Estate of JEAN ANN HARTY BASEL, deceased, in the amount of Two Million Dollars *270 ($2,000,000.00) as to the claims pending against Defendants. This Offer of Judgment is being served on Defendants jointly.
Post-trial, Plaintiffs moved for attorneys' fees and costs pursuant to section 768.79. Defendants moved to strike the motion and argued at the hearing thereon that the offer did not comply with the provision in Florida Rule of Civil Procedure 1.442(c)(3) that "[a] proposal may be made by or to any party or parties and by or two any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party." The court found that the offer was void for failure to comply with the particularity requirement of rule 1.442(c)(3). We agree.
The instant offer obviously did not comply with the express requirements of rule 1.442(c)(3). It was directed not only to McFarland & Son, Inc. and Queen, but also to Betty Swift, the personal representative of Jean Basel's estate, yet no separate amount attributable to Jean, or any other Defendant, was made. Because an offer of judgment is made before anyone knows the result of the case, the efficacy of the offer must be analyzed as it would be at the time it was made. Pre-trial there was no way for the Defendants to know that the bulk of the damages would be economic and the percentage of fault of Plaintiff would be less than the percentage of fault applicable to any particular Defendant. See section 768.81(3), Fla. Stat. (1997).[4]
In order to give effect to rule 1.442(c)(3), a general offer to a group of defendants without assigning each defendant a specific amount must be held to lack the particularity required by the rule. The rule was amended in 1996, the Committee Note informs, in order to conform the rule to Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from on other grounds, Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla.1995). Fabre held that subsection 768.81(3) requires that judgment should be entered against each liable party on the basis of that party's percentage of fault. While obviously a plaintiff making an offer of judgment cannot know the percentage of fault to assign each defendant to whom it proposes settlement, the rule requires that a specific amount be set forth as to each defendant, thus eliminating the possibility of a joint and several-type settlement which leaves the defendants in limbo and opens the door to continued litigation between the defendants. Accordingly, the trial court correctly denied Plaintiffs' motion for fees and costs under their offer of judgment.
REVERSED and REMANDED for further proceedings.
THOMPSON, J., and BLACKWELL-WHITE, A., Associate Judge, concur.
NOTES
[1] By separate appeal (case # 98-969), Defendants challenge the propriety of the post-judgment order awarding Plaintiffs their costs pursuant to section 57.041, Florida Statutes. The two cases, # 98-614 and # 98-969, were consolidated for appellate purposes. Our reversal of case # 98-614 necessitates the reversal of the order appealed in case # 98-696.
[2] In fact, the accident occurred on a Saturday and the couple's final divorce hearing was scheduled for that Monday.
[3] Following a lengthy trial, the jury found Queen 20% liable, McFarland & Son, Inc. 25% liable, Jean 45% liable, and Mark 10% liable. Total damages for Mark were assessed at $6,693,422. Final judgment was entered against Queen and McFarland & Son, Inc. jointly and severally for $5,124,079.80 in economic damages and $200,000 in noneconomic damages. An additional $250,000 was charged solely to McFarland & Son, Inc. for noneconomic damages.
[4] This section provides:

In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.