825 So.2d 941 (2002)
Randall C. THOMPSON, as Personal Representative of the Estate of Stephan Randall Thompson, deceased, for the use and benefit of Randall C. Thompson and Marian Thompson, as surviving parents of Stephan Randall Thompson, deceased, Appellants,
v.
Andrew K. HODSON, M.D., Andrew K. Hodson, M.D., P.A., Appellee.
Andrew K. Hodson, M.D., Appellant/Cross-Appellee,
v.
Randall C. Thompson, as Personal Representative of the Estate of Stephan Randall Thompson, deceased, for the use and benefit of Randall C. Thompson and Marian Thompson, as surviving parents of Stephan Randall Thompson, deceased, Appellee/Cross-Appellant.
Andrew K. Hodson, M.D., Appellant,
v.
The Estate of Stephan Randall Thompson, deceased, Appellee.
Nos. 1D99-2878, 1D99-4797, 1D00-75.
District Court of Appeal of Florida, First District.
May 9, 2002.
*944 Nolan Carter and Karen R. Wasson, Orlando, for Appellants.
Robert C. Gobelman and Mary Bland Love of Gobelman, Love, Gavin, Blazs & Mathis, Jacksonville, for Appellee.
KAHN, J.
These consolidated appeals arise from a wrongful death action and a related probate action. Randall C. Thompson (Thompson), as the personal representative of the estate of his son, appeals from the final judgment in favor of Andrew K. Hodson, M.D. (Hodson). In case number 1D99-2878, Thompson argues: 1) certain unobjected-to comments made by Hodson's lawyer in closing argument amounted to fundamental error; 2) Hodson's proposal for settlement was not valid; and 3) the trial court erred in refusing to lift a stay order requiring Thompson's lawyer to hold certain settlement proceeds. In cases 1D99-4797 ("the probate case") and 1D00-75, Hodson appeals from the trial court's failure to compel Thompson to pay the judgment for attorney's fees and costs awarded to Hodson pursuant to the offer of judgment statute. Hodson argues in the wrongful death action and the probate action that the trial court erred in finding that Thompson was not required to pay Hodson's judgment for attorney's fees from settlement proceeds from a settling co-defendant. On cross-appeal in the probate case, Thompson argues that Hodson's claim against the estate was time-barred by sections 733.702 and 733.710, Florida Statutes. We affirm the trial court on all issues. This resolution renders moot the stay issue raised by Thompson.

I.
The deceased, Stephan Randall Thompson (Stephan), sustained severe head injuries in an automobile accident. Stephan underwent treatment by a team of nine doctors assembled by Dr. Hodson, a neurologist. Although Stephan's neurological *945 condition improved at first, he ultimately died from injuries sustained in the accident. The death engendered the underlying malpractice claims against several medical providers.
Initially, Thompson, as plaintiff, filed a wrongful death complaint in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida against the following defendants: Florida Board of Regents, d/b/a University of Florida College of Medicine, a/k/a Shands Teaching Hospital and Clinics, Inc. (Shands); Gonzalo A. Aguilar, M.D. (Aguilar); Gonzalo A. Aguilar, M.D., P.A.; Andrew K. Hodson, M.D.; Andrew K. Hodson, M.D., P.A.; Mark A. Spatola, M.D. (Spatola); Mark A. Spatola, M.D., P.A.; Dean C. Lohse, M.D.; Dean C. Lohse, M.D., P.A.; and Lohse-Spatola-Oppenheimer, P.A. On July 18, 1995, the case was transferred to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. On April 6, 1995, Thompson filed his Petition for Administration of the Estate of Stephan Randall Thompson, deceased, in the Fourth Judicial Circuit in and for Duval County, Florida, Probate Division. On April 10, 1995, the probate court entered an order appointing Randall Thompson as Personal Representative of the estate.
On June 17, 1996, Thompson filed a Notice of Dismissal as to Shands. On February 19, 1999, Hodson served a Proposal for Settlement upon Thompson in the amount of $25,000. Thompson did not accept the proposal. Before trial, on March 26, 1999, Thompson filed a Stipulation of Dismissal as to Spatola, Lohse, and Lohse Spatola Oppenheimer, P.A., and the court dismissed those defendants.
After the trial began, on April 7, 1999, Thompson settled the wrongful death/medical malpractice action with regard to claims against Aguilar for $250,000. At that time, Thompson dismissed the claim on behalf of the Estate of Stephan Randall Thompson, and announced, "[the personal representative] is going to apportion the settlement with Dr. Aguilar to satisfy the estate claim, the individual estate claim." The trial then proceeded solely against Dr. Hodson on the parents' survivor claims. On April 16, 1999, the jury returned a verdict in favor of Dr. Hodson.
On April 21, 1999, Hodson filed a Statement of Claim in the probate court. At the same time, Hodson filed, also in the probate court, a Motion to Prohibit Disbursement of Settlement Proceeds, referencing the settlement with Aguilar. Hodson argued that the funds were necessary to pay the anticipated judgment for attorneys' fees in the civil action and/or the claim filed against the estate. On April 23, 1999, the court entered the Order Staying Disbursement of Settlement Proceeds, staying disbursement for sixty days. Then, on April 29, 1999, Hodson filed, in the probate court, a Motion to Compel Personal Representative to Deposit Settlement Proceeds into the Registry of the Court ("Motion to Compel"). Simultaneously, Hodson filed a similar motion before Judge Soud, who had presided over the wrongful death action. On May 4, 1999, Hodson filed a Motion for Taxation of Attorneys' Fees and Costs. Also on May 4, 1999, the Motion to Compel came on for hearing before Judge Weatherby in the probate division. Judge Weatherby, without acting on the merits of the parties' arguments, transferred the probate case to Judge Soud for resolution of all issues in both proceedings.
On May 11, 1999, Thompson filed, in the probate court, a Motion to Dismiss Claim with Prejudice. This motion argued that Hodson's claim against the estate was time-barred by sections 733.702 and 733.710, Florida Statutes. That same day, Judge Soud heard Hodson's Motion to *946 Compel and Thompson's Motion to Lift Stay to Allow Personal Representative to Distribute Settlement Proceeds ("Motion to Lift Stay"). In reliance on statements made by Thompson's counsel,[1] Judge Soud denied Hodson's Motion to Compel, and he also denied Thompson's Motion to Lift Stay imposed by the probate court. On May 24, 1999, the court heard argument on many motions and issues, including Hodson's Motion for Taxation of Attorneys' Fees and Costs and whether Hodson's fees and costs can be recovered from the survivors' settlement proceeds. At the hearing, Judge Soud orally entered judgment against the personal representative for the fees and costs determined at the hearing. Neither party disputes the amount awarded.
On June 30, 1999, the court entered a written Judgment Awarding Attorney's Fees and Costs in favor of Hodson based on the unaccepted proposal for settlement. By separate order, the court ordered that $100,000 of the proceeds of the settlement with Aguilar be retained in the trust account of Thompson's counsel. On July 2, 1999, the trial court, in the wrongful death action, entered final judgment in Hodson's favor.
On September 30, 1999, Hodson filed, in the probate action, a Motion to Determine Class I Claim and For Distribution, relating to the June 1999 Judgment Awarding Attorney's Fees and Costs. On September 30, 1999, Hodson filed, in the wrongful death action, a Motion to Compel Payment by Personal Representative, referencing the Judgment Awarding Attorneys' Fees and Costs. On November 10, 1999, the probate court entered a Final Order on Motion to Determine Class I Claim and For Distribution finding that Hodson's judgment for fees does represent a Class I claim, but that Hodson is not entitled to payment out of the settlement proceeds. The same day, the trial court also entered the Final Order on Motion to Compel Personal Representative to Pay Judgment, denying the motion.

II.
We first address the only issue raised concerning the liability trial. Thompson argues that Hodson's counsel, in closing argument, made improper arguments that amount to fundamental error. These remarks, according to Thompson, implied that Hodson was the only doctor, out of nine possible defendants, that Thompson sued.[2] Analysis of this issue is governed by Murphy v. International Robotic Systems, Inc., 766 So.2d 1010 (Fla.2000). Although counsel made no contemporaneous objection, we may review the issue because Thompson filed a motion for new trial, and the motion addressed the asserted improper *947 comments. See Murphy, 766 So.2d at 1027.
Under Murphy, in order to amount to fundamental error, the unobjected-to arguments must be: 1) improper, 2) harmful, 3) incurable, and 4) such that it so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial. See id. at 1028-30. The arguments at issue in this case do not meet all elements of this test and do not, therefore, rise to the level of fundamental error.
As to the first element of the Murphy test, Thompson argues that Hodson's closing argument was improper because it misrepresented the evidence. Specifically, Thompson claims that comments suggesting Thompson blamed only Hodson for Stephan's death, when, in reality, Thompson sued many doctors, was a false statement. Assuming, without deciding, that these comments were improper, they do not meet the remaining elements of the Murphy analysis. For example, under the second prong of the Murphy analysis, to be considered harmful enough to warrant a new trial, the comments must be such that no other remedy is available and the comments must be "so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury." Id. at 1029. The court in Murphy specifically stated that "[T]he improper closing argument comments must be of such a nature that [they reach] into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments." Id. at 1030. Hodson's arguments do not even approach such a standard.
Thompson argues that the comments in this case were harmful in that they were pervasive throughout Hodson's closing arguments, and they sufficiently affected the jury's consideration of the case. The thrust of Hodson's closing argument, however, aside from the allegedly improper remarks, was that every doctor involved in Stephan's care made reasonable decisions given the information they had available at the time, and record evidence supports this assessment. The record contains ample evidence from which a jury could have fairly rendered a defense verdict. Thus, the comments here do not meet the second part of the Murphy test.
Even if Thompson could show that Hodson's allegedly improper comments were harmful, he has not presented any reasons why a curative instruction would not have been sufficient in this case. As Hodson points out in his answer brief, if the comments were improper, Thompson could have objected to the first comment and prevented further error. Thompson's main argument is that, because he was not legally permitted to tell the jury of the other settlements, he had no way to counteract Hodson's empty chair argument and was forced to sit back and watch error occur. That interesting characterization has no bearing on whether a curative instruction would have been sufficient had Thompson made a timely objection. As the Murphy court pointed out, "[I]t will be extremely difficult for a complaining party to establish that the unobjected-to argument is incurable." 766 So.2d at 1030. Thompson has not met this burden.
Finally, Thompson must establish that the unobjected-to arguments "so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." Id. In describing what type of argument would meet this criterion, the Murphy court said:
Although we do not specifically limit the types of improper argument that may fit within this category, we recognize that *948 the category necessarily must be narrow in scope. For example, closing argument that appeals to racial, ethnic, or religious prejudices is the type of argument that traditionally fits within this narrow category of improper argument requiring a new trial even in the absence of an objection.
Id. Thompson does not demonstrate how the unobjected-to arguments in this case affect the public's view of the justice system. Instead, he presents an argument, based on his view of judicial economy and pragmatism,[3] advocating acceptance of a standard that would always allow for appellate challenge of unobjected-to closing arguments. Murphy, however, has preempted such an argument. In the absence of any reasons why affirmance on this point would damage the public's view of the justice system, and considering the high standard adopted by the supreme court, Thompson cannot established fundamental error.

III.
Thompson argues on cross-appeal that Hodson's statement of claim concerning fees and costs was not timely filed according to sections 733.702 and 733.710, Florida Statutes. Thompson cites May v. Illinois National Insurance Co., 771 So.2d 1143 (Fla.2000), for the proposition that these two statutes act as a statute of repose and automatically bar claims that are filed more than two years after decedent's death. The statutes cited by Thompson are inapplicable to the instant case. This court has clearly stated:
Because [claimant] is not making a claim or demand against the decedent's estate that arose before her death, and because the action cannot be deemed a liability of the decedent, as it arose well after her death, the claim is not subject to the probate code's statutes of nonclaim.
Swenszkowski v. Compton, 662 So.2d 722, 723 (Fla. 1st DCA 1995) (citing In re Estate of Kulow, 439 So.2d 280, 282 (Fla. 2d DCA 1983)); see also Langford v. Ferrera, 823 So.2d 795, 797 (Fla. 1st DCA 2001) (stating that claims for post-death expenditures "are not subject to the probate code's statutes of nonclaim"). Hodson's claim for attorney's fees arose after decedent's death and because of Thompson's actions. This claim is not subject to the two-year limitation.

IV.
We next address the validity of the offer of judgment served on Thompson, the personal representative. The proposal for settlement served in this case offered a lump-sum, non-specific settlement of $25,000 to settle "all of the claims set Forth in this cause against these Defendants." The form and content requirements for a proposal for settlement are set forth in the Florida Rules of Civil Procedure:
Form and Content of Proposal for Settlement.
(1) A proposal shall be in writing and shall identify the applicable Florida law under which it is being made.
(2) A proposal shall:

*949 (A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
(B) identify the claim or claims the proposal is attempting to resolve;
(C) state with particularity any relevant conditions;
(D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;
(E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
(F) state whether the proposal includes attorney fees and whether attorney fees are part of the legal claim; and
(G) include a certificate of service in the form required by rule 1.080(f).
(3) A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party.
Fla. R. Civ. P. 1.442(c) (1999). Therefore, any proposal from a single defendant directed to multiple plaintiffs must specifically apportion the settlement offer among the plaintiffs. See Fla. R. Civ. P. 1.442(c)(3); see also Allstate Indem. Co. v. Hingson, 774 So.2d 44, 44 (Fla. 2d DCA 2000) (affirming the trial court's denial of appellant's motion for attorney's fees because the offer of judgment served on plaintiffs had not differentiated between the amount offered for the husband's injuries in an automobile accident and the wife's resulting consortium claim), approved, 808 So.2d 197 (Fla.2002); United Servs. Auto. Ass'n v. Behar, 752 So.2d 663, 664-65 (Fla. 2d DCA 2000) ("The trial court correctly found that USAA's offer of judgment was defective because it failed to comply with the mandate of rule 1.442(c)(3) to specify the amounts offered to each party. Here, a lump sum amount was offered, without the necessary specificity as to Dr. or Mrs. Behar.... Because there are two plaintiffs in this suit, itemization of USAA's offer to Mrs. Behar, as well as to Dr. Behar, is required.").
The multiple parties/apportionment requirement of the rule does not render Hodson's proposal for settlement deficient. By statute, a wrongful death claim is brought by one plaintiffthe personal representative of the estate of the deceased. See § 768.20, Fla. Stat. (1993) ("Parties.The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate...."). This action covers all damages of the decedent's survivors and the estate, including the mental pain and suffering of the parents or other eligible survivors of the deceased. See § 768.21(4), Fla. Stat. (1993). The personal representative has statutory responsibility to settle a wrongful death action. See In re Estate of Catapane, 759 So.2d 9, 10-11 (Fla. 4th DCA 2000); Pearson v. DeLamerens, 656 So.2d 217, 220 (Fla. 3d DCA 1995) ("The personal representative is the individual having the power to enter into settlements of wrongful death actions."). "Where the personal representative receives a nonspecific settlement offer in a wrongful death action, she is obligated to apportion the proceeds between the estate and the survivors in a reasonable and equitable manner." Guadalupe v. Peterson, 779 So.2d 494, 497 (Fla. 2d DCA 2000); accord Continental Nat'l Bank v. Brill, 636 So.2d 782, 784 (Fla. 3d DCA 1994). If an individual survivor objects to the amount of the settlement or the apportionment of the settlement among beneficiaries, the settlement will not be effective until approved by the court. See § 768.25, Fla. Stat. (1993). As this court has recently stated:

*950 If the personal representative secures a recovery in a wrongful death case, the personal representative apportions it among those entitled to receive it, subject to court approval if a survivor objects. A defendant in a wrongful death action need not apportion a proposed settlement among the estate and survivors on behalf of whom the personal representative is acting in order to comply with the requirements of section 768.79 and Florida Rule of Civil Procedure 1.442. No such proposed apportionment would bind the personal representative in any event.
Dudley v. McCormick, 799 So.2d 436, 441 (Fla. 1st DCA 2001) (citation and footnote omitted). Under these rules and procedures, Hodson's proposal for settlement was validly served on the personal representative as a lump sum offer, even though acceptance of the offer might well have been conditioned upon court approval under section 768.25.
Thompson relies on McFarland & Son, Inc. v. Basel, 727 So.2d 266, 270 (Fla. 5th DCA 1999), which espouses the proposition that a general offer of judgment made to multiple defendants does not comply with Rule 1.442. Thompson would transpose this rule to an offer made by the defense in a case where the plaintiffs have multiple claims. This argument fails, first, as discussed herein, because only one plaintiff may bring a statutory wrongful death action. Also, the logic of the argument falls short because, in a case like McFarland, an individual defendant would be frustrated in an attempt to accept the offer. See McFarland, 727 So.2d at 270 ("While obviously a plaintiff making an offer of judgment cannot know the percentage of fault to assign each defendant to whom it proposes settlement, the rule requires that a specific amount be set forth as to each defendant, thus eliminating the possibility of a joint and several-type settlement which leaves the defendants in limbo and opens the door to continued litigation between the defendants."). By contrast, the wrongful death plaintiff personal representative has the statutory authority to accept the offer and then has the obligation to apportion it equitably or to seek court approval of an apportionment.

V.
The remaining question before us asks whether Hodson may recover fees from the survivors' shares of settlement proceeds from other settling defendants. In these consolidated cases, we have determined that Hodson has shown an entitlement to fees under section 768.79, Florida Statutes, by serving an offer of judgment on Thompson and then trying the case to a defense verdict. Hodson's dilemma, however, comes down to identifying any funds that are available to pay the judgment for fees and costs. We hold that the trial court properly denied Hodson's request to compel Thompson to satisfy the judgment for fees and costs by using monies recovered for the survivors in earlier settlements.

A.
Hodson asserts that section 768.26, Florida Statutes, mandates payment of his judgment for fees and costs from the settlement proceeds collected by Thompson, as personal representative, before distribution of those funds to the survivors. Section 768.26 states:
Attorneys' fees and other expenses of litigation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards.
*951 § 768.26, Fla. Stat. (1993). This statute provides for the "deduction of litigation expenses from awards made to survivors, but there is no provision authorizing recovery of costs against such survivors by a successful defendant." Johnson v. Schneegold, 419 So.2d 684, 685 (Fla. 2d DCA 1982). Hodson argues that this result is inequitable, as the survivors are able to reject a reasonable offer of judgment with impunity. The Johnson court acknowledged this apparent oversight. The Legislature, however, has seen no need to correct the perceived deficiency in the wrongful death statute. Although Johnson concerned costs, its rationale applies equally to attorneys' fees awarded to the wrongful death defendant. Despite its decades-long existence, the statute has never been cited as authority for recovery of fees from survivors by the opposing party. Cases construing section 768.26, Florida Statutes generally address the question of fees due to the personal representative's attorney. See, e.g., Wiggins v. Estate of Wright, 786 So.2d 1247, 1249 (Fla. 5th DCA 2001) (discussing the allocation of fees among the personal representative's attorney and attorneys hired by other beneficiaries); In re Estate of Catapane, 759 So.2d 9, 11 (Fla. 4th DCA 2000) (same); Adams v. Montgomery, Searcy & Denney, P.A., 555 So.2d 957, 958 (Fla. 4th DCA 1990) (same). As the Catapane court noted, "Section 768.26 provides for payment of counsel selected by the personal representative...." Catapane, 759 So.2d at 11.
Hodson attempts to cast a temporal distinction between Johnson and the present case. Here, he seeks costs and fees from the personal representative while the personal representative still has the settlement proceeds; he does not want to tax costs against the survivors individually after the money is in their hands, as the defendant attempted in Johnson. This is a distinction without a difference. The personal representative, as the statutorily-appointed party plaintiff in the wrongful death case, is merely a conduit for the settlement proceeds, and he is duty-bound to apportion the proceeds equitably among the estate and the survivors. See §§ 768.21, .25, Fla. Stat. (1993); see also Dudley, 799 So.2d at 441. Therefore, the personal representative has no authority to satisfy the judgment for fees and costs from the money he holds for the survivors. Section 768.26 does not provide that authority.
The dissent's citation of the personal representative's statutory fiduciary obligation under section 733.602(1), Florida Statutes (1993), does not really aid the analysis. In many wrongful death cases, and certainly in the present case, the personal representative is not actually administering an estate. Instead, the personal representative has been appointed, and the estate opened, solely to provide a vehicle for the wrongful death action. Of course, once so appointed, the personal representative does take on the fiduciary obligations delineated in the statute. Here there is simply no allegation of malfeasance, misfeasance, or anything approaching a breach of the personal representative's obligation either to the beneficiaries of the estate or to creditors.

B.
Hodson also argues, as he did successfully below, that the judgment for fees and costs represents a Class I claim against the estate under section 733.707, Florida Statutes (1993), and he is entitled to payment from the money held by the personal representative to satisfy the claim. We agree, as did the trial court, that a judgment awarding fees and costs to a successful defendant in a wrongful death case is a Class I claim. See Teague v. *952 Estate of Hoskins, 709 So.2d 1373 (Fla. 1998); In re Estate of Grillo, 393 So.2d 578 (Fla. 4th DCA 1981). A claim against the estate, however, is payable from funds held by the estate. In this case, the estate has no assets.
We reach this conclusion because the estate had no claim in the wrongful death case. The Wrongful Death Act provides:
(6) The decedent's personal representative may recover for the decedent's estate the following:
(a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to present money value, may also be recovered:
1. If the decedent's survivors include a surviving spouse or lineal descendants; or
2. If the decedent is not a minor child as defined in s. 768.18(2), there are no lost support and services recoverable under subsection (1), and there is a surviving parent.
(b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against her or his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5).
(c) Evidence of remarriage of the decedent's spouse is admissible.
§ 768.21(6), Fla. Stat. (1993). Stephan, the decedent, 22 years old at the time of his death, qualified as a minor child for purposes of the wrongful death act. See § 768.18(2), Fla. Stat. (1993) ("`Minor children' means children under 25 years of age, notwithstanding the age of majority."). Stephan also had no spouse or lineal descendants. Further, the record contains no evidence of medical or funeral expenses. Thus, the only viable claims in this wrongful death case were the survivor claims of the parents. This result does not change because Thompson's counsel originally brought a claim on behalf of the estate and then announced in court that the settlement with Aguilar satisfied that claim. No estate claim existed, and Hodson does not argue otherwise.
If the personal representative's apportionment of settlement proceeds is reasonable and equitable, the apportionment will be upheld even when it allots no funds (or funds insufficient to pay creditors' claims) to the estate. See In re Estate of Wiggins, 729 So.2d 523, 525 (Fla. 4th DCA 1999). In the present case, apportionment to the survivors, with nothing to the estate, is reasonable as a matter of law.[4] The trial court cannot require the personal representative to apportion money to the estate to pay even a Class I claim because the estate had no right to recover in the wrongful death action.
The dissent labels the result here as "asymmetry." This accusation ignores the well-established point that attorney's fees in Florida are not due as a matter of equity. Instead, such fees must be based upon a contractual or statutory right. See Dade County v. Pena, 664 So.2d 959. 960 (Fla.1995) ("This Court follows the `American Rule' that attorney's fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties.") (citing Florida Patient's Comp. Fund v. Rowe, 472 So.2d 1145, 1148 (Fla. *953 1985)). Surely asymmetry has resulted in the past as a result of the offer of judgment procedure precisely because of the highly technical nature of that procedure. See e.g., Allstate Indem. Co. v. Hingson, 808 So.2d 197, 199 (Fla.2002); Dudley, 799 So.2d at 441; Behar, 752 So.2d at 664-65; Allstate Ins. Co. v. Materiale, 787 So.2d 173, 175-76 (Fla. 2d DCA 2001) (holding that an offer was invalid because it failed to state the amount attributable to each of multiple plaintiff offerors as required by Florida Rule of Civil Procedure 1.442); Stern v. Zamudio, 780 So.2d 155, 155 (Fla. 2d DCA 2001) (holding that an offer was invalid because it failed to state the amount attributable to each of multiple plaintiff offerees as required by Florida Rule of Civil Procedure 1.442); Ford Motor Co. v. Meyers, 771 So.2d 1202, 1204 (Fla. 4th DCA 2000) (holding that an offer was invalid because it failed to state the amount attributable to each of multiple defendant offerees as required by Florida Rule of Civil Procedure 1.442); McFarland & Son, Inc., 727 So.2d at 269 (same).
Moreover, the offer of judgment statute has been strictly construed. See, e.g., Hingson, 808 So.2d at 199 (holding that section 768.79, Florida Statutes, not just Florida Rule of Civil Procedure 1.442, requires an offer from one defendant to state the amount and terms attributable to each of multiple plaintiff offerees); Dudley, 799 So.2d at 441 (holding that an offer was invalid because it failed to state the amount attributable to each of multiple plaintiff offerees as required by Florida Rule of Civil Procedure 1.442); United Servs. Auto. Ass'n v. Behar, 752 So.2d 663, 664-65 (Fla. 2d DCA 2000) (same). Hodson simply offers us no authority for the proposition that attorney's fees may be recovered from non-parties.

C.
Hodson argues that Grillo stands for the proposition that a trial court can require the personal representative to satisfy a cost judgment such as this even before the court approves an apportionment. We do not read Grillo as compelling this result. The Grillo court addressed the issue of whether a successful defendant's cost judgment represents a Class I claim. See Grillo, 393 So.2d at 579 ("The question presented here is whether a cost judgment entered against the estate in a wrongful death action initiated by the estate is a `cost' or `expense of administration' entitled to Class 1 priority."). The Grillo court did not address the issue of apportionment of settlement proceeds to the estate because that issue was not before it. See id. at 580 ("We deal only with those portions of the case brought before us on appeal and make no ruling on the petition for distribution, which is yet to be decided."). Here, we know that the estate has no assets to which the cost judgment may attach.

VI.
We would be ill-advised to ignore the statutory wrongful death scheme under which the personal representative alone has responsibility and authority to settle a wrongful death action. See discussion ante at section IV. A survivor does not have actual veto power over the personal representative's settlement decision. Instead, if the survivor objects to amount or apportionment, the authority of the court may be invoked. See § 768.25, Fla. Stat. (1993). The Wrongful Death Act does not appear to contain any provision, however, that would allow a survivor, as a potential beneficiary of the wrongful death recovery, to compel the personal representative to accept a settlement offer. Accordingly, we do not perceive that the survivors, out of whose share of the recovery an attorney's fee would ultimately be *954 paid to Dr. Hodson, can be fairly said to have not accepted the offer of settlement. See § 768.79(6)(a), Fla. Stat. (1993) ("If a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs ... and attorney's fees....")

VII.
In sum, the trial court reached the correct conclusion in these cases. Because Hodson will not be able to recover fees from the survivors' proceeds, the stay imposed by the trial court will be dissolved as moot upon issuance of our mandate.
AFFIRMED.
WOLF, J., concurs, and BENTON, J., concurs in part and dissents in part with opinion.
BENTON, J., concurring in part and dissenting in part.
The court today holds that a plaintiff in a wrongful death action may spurn a qualifying proposal for settlement from one of several defendants, then defeat collection of the judgment for costs and attorney's fees that results from failure to accept the offer of settlement, simply by announcing an intention to allocate no portion of a substantial recovery (from other defendants) to the decedent's estate.
Here the personal representative, who as statutory plaintiff filed suit against nine different defendants in a medical malpractice action for wrongful death, rejected a timely proposal for settlement duly "made pursuant to Rule 1.442, Florida Rules of Civil Procedure, and Section 768.79, Florida Statutes." This forced the case to trial, at which Dr. Hodson, the defendant who had offered to settle,[5] was exonerated. From affirmance of the trial court's ruling that the personal representative did not have to satisfy the resulting judgment for fees and costs, I respectfully dissent. I concur in the judgment otherwise.
Today's decision effectively immunizes plaintiffs in wrongful death actions against cost and fee awards under the offer of judgment statute, in defiance of the statutory directive that
if a defendant files an offer of judgment which is not accepted by the plaintiff..., the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by ... him ... if the judgment is one of no liability....
§ 768.79(1), Fla. Stat. (1999); see Fla. R. Civ. P. 1.442. On the other hand, defendants in wrongful death cases remain liable in the event they reject a personal representative's qualifying proposal for settlement.
The majority opinion defends this asymmetry, not by reference to the governing *955 statute, but by pointing out that a personal representative may, in some circumstances,[6] elect to allocate none of the proceeds recovered on wrongful death claims to a decedent's estate, allocating all proceeds instead to the survivors directly. Compare In re Estate of Wiggins, 729 So.2d 523, 525-26 (Fla. 4th DCA 1999), with Continental Nat'l Bank v. Brill, 636 So.2d 782, 783-84 (Fla. 3d DCA 1994). But this begs the question. The majority opinion fails to explain why the personal representative's choice of channel for routing the proceeds of suit to the surviving parents should confer a right to ignore a concededly valid judgment entered in accordance with the offer of judgment statute and rule.
The statutory scheme governing wrongful death actions makes the personal representative a fiduciary, on behalf of estate and survivors alike a species of administrator ad litem. See Pearson v. DeLamerens, 656 So.2d 217, 220 (Fla. 3d DCA 1995) ("The personal representative is responsible for the conduct of the litigation. In so doing, the personal representative acts in a fiduciary capacity."). By statute, a wrongful death action must
be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death.
§ 768.20, Fla. Stat. (1993). The proceeds the personal representative recovered in the present case have been deposited in the personal representative's counsel's trust account and are in law still in the hands of the personal representative, who holds "for the benefit of the decedent's survivors and estate," id., as
a fiduciary who shall observe the standards of care applicable to trustees.... He shall use ... the authority of any order in proceedings to which he is party, for the best interests of interested persons, including creditors as well as beneficiaries.
§ 733.602(1), Fla. Stat. (1993). Before the personal representative disburses moneys recovered for wrongful death, "[a]ttorneys' fees and other expenses of litigation shall be paid by the personal representative and deducted from the awards to the survivors and the estate." § 768.26, Fla. Stat. (1993). See Wiggins v. Estate of Wright, 786 So.2d 1247, 1249 (Fla. 5th DCA 2001) ("Clearly this statute contemplates that the expenses of litigation shall be paid before there is a distribution to anyone and that services performed for an individual beneficiary must be paid by that beneficiary."). An analogous rule obtains in the administration of estates:
The fees at issue here were incurred because the personal representative brought an action against Teague in the course of an effort to administer the estate. The personal representative rejected an offer of judgment tendered by Teague to resolve the action. Because the attorney's fees here would not have been incurred had it not been for the affirmative action of the personal representative and because the personal representative rejected the offer of judgment, the fees deserve and are entitled to inclusion in Class 1 costs and expenses of administration.
*956 Teague v. Estate of Hoskins, 709 So.2d 1373, 1374 (Fla.1998). The recovery in a wrongful death action is not part of the decedent's estate until and unless the personal representative disburses the recovery (in whole or in part) to the estate. But in the role of statutory plaintiff, the personal representative must pay litigation expenses "off the top" before disbursing the proceeds of a wrongful death action,[7] just as such expenses enjoy first priority in the administration of the estate itself.
Today's decision conflicts with the decision in In re Estate of Grillo, 393 So.2d 578, 579-80 (Fla. 4th DCA 1981), where a personal representative suing for wrongful death recovered "approximately $35,000" from one defendant, but lost at trial against General Motors "after which General Motors successfully moved to tax costs of $8,382.31 against the estate." The personal representative
sought distribution of $20,000 to the surviving spouse, $5,000 each to the three children, and nothing to the estate. The probate division granted the motion of General Motors Corporation requiring the personal representative to satisfy the cost judgment. No ruling was made on the petition of the personal representative to authorize distribution.
Id. at 579. On appeal, the Fourth District affirmed. As the majority opinion points out, the Grillo court blurred the distinction between the personal representative as statutory plaintiff in the wrongful death action and the personal representative as administratrix of the estate by citing provisions of the probate code even though the personal representative sought to allocate the entire recovery to the survivors. The court nevertheless necessarily held that litigation costs incurred pursuing the wrongful death claim had to be paid before any recovery could be disbursed.
The majority opinion's reliance on Johnson v. Schneegold, 419 So.2d 684, 685 (Fla. 2d DCA 1982), and its progeny is misplaced. The narrow issue addressed there was whether the holder of a judgment against a personal representative for costs and fees (or any other creditor of the personal representative) could recover from, not the personal representative who no longer had the funds, but survivors to whom the funds had already been disbursed. Here the funds are still within the personal representative's legal control. Dr. Hodson seeks to satisfy his judgment from these funds. The majority opinion confuses the issue in stating: "Hodson simply offers us no authority for the proposition that attorney's fees may be recovered from nonparties." Ante, p. 953. The personal representative is a partyindeed, the only party plaintiffand funds to satisfy the judgment are under his control.
Likewise, although for different reasons, the decision in In re Estate of Wright offers no support for the majority opinion's view that the personal representative is free to walk away from the Hodson judgment or other litigation expenses. The Wright court approved as equitable an allocation as between estate and survivors even though "virtually no funds would be available from which the claims of the medical creditors could be paid." 729 So.2d at 525. But the "claims of the medical creditors" plainly did not constitute *957 claims for "[a]ttorneys' fees and other expenses of litigation," within the meaning of section 768.26, Florida Statutes (1993). Litigation expenses should be paid before the recovery is disbursed, whether it is disbursed to some or all of the survivors directly or to the decedent's estate, or to some combination thereof.
By bringing suit "for the benefit of the decedent's survivors and estate" and by rejecting Dr. Hodson's offer to settle for $25,000, the personal representative incurred liability for Dr. Hodson's costs and fees, once the jury decided in Dr. Hodson's favor. Just as the personal representative's rejection of Dr. Hodson's proposal for settlement reduced the recovery available for allocation by $25,000, so expenses incurred in procuring the recovery, including those occasioned by rejecting Dr. Hodson's proposal for settlement, ought to be paid before any funds are disbursed, whether to the estate or to one or more survivors.
NOTES
[1] At the May 11 hearing, the court asked Thompson's counsel, "Nolan, is there any objection to keeping this money in your trust account until [the hearing on entitlement to fees] is concluded?" Counsel responded, "No, I don't have any problem with that." The trial court's order reflected this exchange:

The court having heard the arguments of counsel, and in reliance upon the representations of Nolan Carter, counsel for the Personal Representative, that the proceeds of settlements obtained by the Personal Representative are on deposit in Mr. Carter's trust account and will remain there pending the court's determination of the motions remaining ... [denies both pending motions].
[2] Counsel made the following statements during closing argument: "[D]oes this death become the responsibility of Dr. Hodson only.... They want to single [Hodson] out and they want to say he's the one.... [D]id he really do anything that was so different than the other people in this case to make his actions incompetent, below the standard of care.... [Hodson] somehow had to know more than all the people he involved who are not blamed."
[3] For example, Thompson argues that the need for a contemporaneous objection, so that the trial court is put on notice of the error, is outweighed by the fact that there is no chance to correct a fundamental error in closing arguments. Thompson also argues that if "the only opportunity is mistrial, it makes no difference to appellate economy or delay whether the request comes in the form of a mistrial at the very end of the trial, or in a motion for new trial.... By the time the case is at the point of closing argument, there is no real effect on judicial or appellate economy."
[4] Although the dissent characterizes this conclusion as based upon an "unlikely premise," nothing in the voluminous record before this court provides support for an assertion that the estate ever had or recovered a claim.
[5] The proposal for settlement was made on behalf of Andrew K. Hodson, M.D. and Andrew K. Hodson, M.D., P.A., but the professional association was named only because the physician was alleged to be its "agent, servant or employee." See Danner Constr. Co. v. Reynolds Metals Co., 760 So.2d 199, 202 (Fla. 2d DCA 2000) ("[W]here a joint offer is made by the defendants in a case, the failure to specify the amount to be contributed by each may be harmless if the theory for the defendants' joint liability does not allow for apportionment under section 768.81, Florida Statutes (1997). This circumstance typically exists in cases where one defendant is vicariously liable for the negligence of another."); Strahan v. Gauldin, 756 So.2d 158, 161 (Fla. 5th DCA 2000) (finding Florida Rule of Civil Procedure 1.442(c)(3) did not require plaintiff to allocate among defendant offerees where, except for active tortfeasor, they "were included in the complaint only under theories of vicarious liability"). See also Philip J. Padovano, West's Florida Practice Series, Civil Practice § 11.5 n. 16 and cases collected there.
[6] The majority opinion asserts that, in the present case, the proposed "apportionment to the survivors, with nothing to the estate, is reasonable as a matter of law," on the unlikely premise that the decedent incurred no medical expenses and that there were no "funeral expenses due to the decedent's ... death." § 768.21(6)(b), Fla. Stat. (1993). But Dr. Hodson's entitlement to collect on his judgment for fees and costs is not contingent on whether or not the personal representative's proposed allocation is reasonable.
[7] It is thus immaterial whether the estate itself has a claim distinct from or in excess of the survivors' claims. Strictly speaking, Dr. Hodson's judgment for fees and costs is neither a claim against the estate nor a claim against the survivors. The judgment is properly payable by the personal representative as statutory administrator ad litem of the wrongful death action. Today's decision insulates the only party who can sue for wrongful death from responsibility for fees and costs awarded under the proposal for settlement statute.