937 So.2d 287 (2006)
Jermaine SHENNETT, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-4407.
District Court of Appeal of Florida, Fourth District.
September 13, 2006.
*288 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
We reverse the convictions in this case because of the admission of testimonial hearsay that violated the Sixth Amendment Confrontation Clause as the United States Supreme Court has construed it in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The state charged appellant, Jermaine Shennett with: 1) burglary of a conveyance *289 and 2) possession of burglary tools, identified in the information as "porcelain pieces." After a jury trial, Shennett was convicted of attempted burglary, as a lesser included offense, and possession of burglary tools as charged.
The conveyance burglarized was a 2000 Dodge Caravan minivan owned by Allison Brown. Brown parked her auto in an empty row of parking spaces at Plantation Central Park. She took her three children to the playground. Within five minutes, a plain clothes officer told her that someone had broken into her minivan. When Brown returned to the parking lot, she saw that her passenger side window had been shattered. There was glass inside and outside of the van. Nothing was missing from inside the Caravan.
At the time Brown parked her vehicle in the lot, Officers Craig Boermeester and Jeff Young were conducting an undercover surveillance in the park. Each officer was in a different unmarked police car. Boermeester testified at trial; Young did not because he was serving in the armed forces in Afghanistan.
Before Brown arrived at the parking lot, Boermeester saw a Ford Taurus pull up next to a Ford Explorer. Boermeester drove into the lot past the Taurus. He noticed that the driver of the Taurus was a heavy set black male with short hair, but he could not tell if anyone else was in the Taurus.
Meanwhile, Officer Young entered the parking lot by a different entrance and took up position on a rooftop so that he could better observe the Taurus. Using his radio, Young notified Boermeester of his position. The Taurus moved and parked next to a red vehicle that blocked Boermeester's view of the Taurus.
Over the radio, Young relayed his observations to Boermeester. Defense counsel raised both a hearsay and Confrontation Clause objection to the admission of Officer Young's statements to Boermeester. The trial court overruled the objections, ruling that the spontaneous statement exception to the hearsay rule applied.
The state played an audiotape of Young's play-by-play description to Boermeester over the radio. On the tape, Young described the following facts, as they occurred, most of which Boermeester was not in a position to observe:
1. When it was next to the red SUV, the door to the Taurus opened twice, but no one exited the car. The driver of the SUV returned and drove away.
2. Brown's minivan pulled into the lot and parked.
3. The Taurus backed into the parking space next to Brown's Caravan, so that the two vehicles were passenger side to passenger side. The passenger of the Taurus got out of the car, crouched down on his knees next to the minivan, and threw something at the minivan's window. The window broke. The Taurus's passenger was a black male with dreadlocks, wearing a black tank top and black shorts. Once the window broke, the passenger began rummaging though the minivan. Boermeester conceded at trial that he did not observe anything that took place by Brown's minivan.
4. At this point, marked police vehicles arrived. The passenger got back in the Taurus and the car slowly moved away, only to be blocked by the police cars.
The Taurus then led the police on a high-speed chase. Ultimately, the Taurus spun out of control and struck a guardrail. Officer Clark, one of the officers in pursuit, approached the passenger side of the Taurus and saw that the door was jammed. Clark identified Shennett as the passenger in the Taurus.
*290 A search of the Taurus revealed a Ziploc baggie containing several pieces of porcelain from a sparkplug and a screwdriver on the front passenger seat. A crime scene technician observed pieces of porcelain among the broken glass in the parking lot. The owner of the Taurus testified that he loaned the car to Shennett, that he knew nothing about the baggie with porcelain, and that the screwdriver was his.

Officer Young's taped statements to Officer Boermeester were inadmissible under Crawford v. Washington, 541 U.S. 36 (2004)

Shennett argues that the audiotaped statements of Officer Young failed to satisfy the Confrontation Clause requirements of the United States Constitution under Crawford. Because the statements were testimonial and Shennett had no opportunity to cross-examine Young, we hold that the statements were inadmissible under Crawford.
In Crawford, the United States Supreme Court held that the admission of testimonial hearsay statements against an accused violates the Confrontation Clause of the Sixth Amendment to the United States Constitution if the declarant is unavailable to testify at trial and the accused had no "prior opportunity" to "cross-examine" the declarant. Crawford, 541 U.S. at 68-69, 124 S.Ct. 1354
Young's audiotaped statement was hearsay, since the statements were not made "at the trial" and were "offered in evidence to prove the truth of the matter asserted," that Shennett committed a burglary. See § 90.801(1)(c), Fla. Stat. (2005). Hearsay is inadmissible under section 90.802, Florida Statutes (2005), unless it falls within an exception to the hearsay rule. The trial judge ruled that the audiotape was admissible under the spontaneous statement exception[1] to the hearsay rule, contained at section 90.803(1), Florida Statutes (2005).
The crucial question in this case is whether Young's audiotaped statement was "testimonial" under Crawford. In setting out the rule in Crawford, the Supreme Court declined to specifically define the term "testimonial." 541 U.S. at 68, 124 S.Ct. 1354. The opinion provides guideposts for analysis. At a minimum, testimonial statements include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." Id.
Beyond the minimum, the Court commented on other, proposed formulations of the "core class of `testimonial' statements." Id. at 51, 124 S.Ct. 1354. Crawford argued for a definition that would include "`ex parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'" Id. (quoting Brief for Petitioner at 23). The majority opinion also took note of a formulation previously set forth in a concurring opinion in another case that would have included "`extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" Id. at 51-52, *291 124 S.Ct. 1354 (quoting White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., concurring)). Finally, amici curiae argued that testimonial statements included those "`that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. at 52, 124 S.Ct. 1354 (quoting brief for National Association of Criminal Defense Lawyers, et al as Amici Curiae at 3). Without endorsing a particular definition of a testimonial statement, the court indicated that all "formulations . . . of testimonial statements" share a "common nucleus." Id.
The "common nucleus" present in the various formulations centers on the reasonable expectation of an objective declarant that the declarant's statement may later be used in the investigation or prosecution of a crime. It is this expectation that distinguishes a child's spontaneous declaration to a parent, see Herrera-Vega v. State, 888 So.2d 66 (Fla. 5th DCA 2004), or a spontaneous statement in a 911 tape, see Towbridge v. State, 898 So.2d 1205 (Fla. 3d DCA 2005), from a true testimonial statement, such as a witness statement to a police officer at the scene of a crime, see Lopez v. State, 888 So.2d 693, 696-700 (Fla. 1st DCA 2004). The circumstances surrounding some types of out-of-court statements, such as police interrogations or statements given under oath, typically give rise to the expectation that they will have a role in a criminal proceeding.
This objective test, focusing on the reasonable expectations of the declarant, is the one we applied in Belvin v. State, 922 So.2d 1046, 1050 (Fla. 4th DCA 2006) (en banc). There we held that breath test affidavits generated by law enforcement for use at a later criminal trial or driver's license revocation proceeding were testimonial, because they qualified as "`statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354); see Contreras v. State, 910 So.2d 901, 905 (Fla. 4th DCA 2005) (indicating that testimonial statements shared an "objective characteristic: `the generation of statements that might be used later against a defendant at trial'") (quoting John F. Yetter, Wrestling With Crawford v. Washington and the New Constitutional Law of Confrontation, 78 FLA. BAR. J. 26, 28 (Oct. 2004)). The Belvin standard for a "testimonial" statement is similar to that established in United States v. Cromer, 389 F.3d 662, 675 (6th Cir.2004):
The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.
Applying the objective test in this case leads to the conclusion that Officer Young's audiotaped statements over the radio to Officer Boermeester were "testimonial" under Crawford. Young was aware that he was in the midst of a surveillance investigation. He knew that his recorded observations would have their place in a criminal prosecution as a contemporaneous record of the criminal conduct of the occupants of the Taurus. Objectively, there was a reasonable expectation that the taped statements would later be used in the prosecution of a crime. Because Shennett did not have the opportunity to cross-examine Young, *292 the admission of the taped statements violated the Confrontation Clause.

The Screwdriver and the Videotape Reenactment Were Inadmissible
In the state's case, Officer Nelson testified that he decided to use the porcelain pieces recovered from the Taurus to try to break a van window. A Dodge dealership provided a 2000 Caravan door and oversaw the demonstration. Nelson testified that a videotape of the event accurately represented the demonstration.
Nelson attempted to break the window three times. The first two times he completely missed the window with the porcelain. On the third attempt, he made contact with the upper left hand corner of the window and broke it. The glass did not fall out because of tinting on the window. The video was played for the jury.
On cross-examination, Nelson conceded that he threw the porcelain at the window like a pitcher in a baseball game. He never attempted to throw while crouching on his knees.
The admission of the videotape demonstration was error. Videotaped reenactments representing an experiment are admissible if they are "conducted under sufficiently similar circumstances." See Dowell v. State, 516 So.2d 271, 274 (Fla. 2d DCA 1987) (citing Young v. Ill. Cen. Gulf R.R., 618 F.2d 332, 337-38 (5th Cir.1980); Vitt v. Ryder Truck Rentals, Inc., 340 So.2d 962, 965 (Fla. 3d DCA 1976)). "[A] court's conclusion as to the similarity of [an] experiment to the event is a matter within the court's discretion." McFarland & Son, Inc. v. Basel, 727 So.2d 266 (Fla. 5th DCA 1999) (citing Vitt, 340 So.2d at 962). If evidence of an experiment is deemed "sufficiently similar" to the actual event, the degree of similarity between the two is more appropriately directed toward the weight of the evidence rather than its admissibility. See Johnson v. State, 442 So.2d 193, 196 (Fla.1983). The requirement of "sufficient similarity" was significant in this case because the videotaped demonstration was to prove an issue in disputewhether the porcelain pieces were capable of breaking the car window, so that they could be a "burglary tool" within the meaning of section 810.06, Florida Statutes (2005), one of the charged felonies.
In this case, the videotaped demonstration was not sufficiently similar to the crime to be of evidentiary value. Shennett threw something from a crouched position, on his knees next to the minivan, to shatter the window. Like a baseball pitcher, the officer in the demonstration threw the porcelain from a standing position and broke the window, but did not shatter it. The trial court abused its discretion in admitting the videotape of the porcelain tossing demonstration.
The trial court also admitted into evidence the screwdriver found on the front passenger seat of the Taurus after Shennett was caught. The owner of the Taurus, Michael Walsh, testified that the screwdriver was his, that he usually kept it in the trunk, but there were times when he kept it in the passenger compartment of the car.
The screwdriver was irrelevant to the issues at trial because it did not "tend[ ] to prove or disprove a material fact" in the case. § 90.401, Fla. Stat. (2005). The burglary tool which Shennett was charged with possessing was "porcelain pieces." There was no evidence that he used the screwdriver in any way to burglarize Brown's minivan. The screwdriver had no connection with either charged offense. *293 See Rigdon v. State, 621 So.2d 475, 478 (Fla. 4th DCA 1993).
Reversed and Remanded.
WARNER and KLEIN, JJ., concur.
NOTES
[1] Because the issue was not briefed on appeal, we do not consider whether Officer Young's audiotaped play-by-play fell under the spontaneous statement exception to the hearsay rule, contained at section 90.803(1), Florida Statutes (2005). See McGauley v. State, 638 So.2d 973 (Fla. 4th DCA 1994); J.M. v. State, 665 So.2d 1135 (Fla. 5th DCA 1996); United States v. Woods, 301 F.3d 556, 562-63 (7th Cir.2002); United States v. Ruiz, 249 F.3d 643, 646-47 (7th Cir.2001); Hallums v. United States, 841 A.2d 1270 (D.C. 2004).