Lindsey Neal WALKER, as personal representative of the Estate of Christopher Seth Walker, deceased, for the benefit of the Estate and survivors Lindsey Neal Walker and Diane Gail Walker, Plaintiff,

v.

Johnny Edward BOZEMAN and Bozeman Construction Company, Inc., Defendants.

Case No. 4:01cv134–RH.

United States District Court,
N.D. Florida,
Tallahassee Division.

Feb. 11, 2003.

Thomas K. Equels, Holtzman, Equels & Furia, Orlando, FL, Walter Umphrey, Paul F. Ferguson, James E. Payne, Provost & Umphrey, LLP. Gregory F. Cox, Esq., Provost Umphrey, LLC, Beaumont, TX, Judson Howard Orrick, Esq., Holtzman Equels, Tallahassee, FL, for Plaintiffs.

Theodore W. Small, Jr., Holland & Knight, Orlando, FL, J. Karl Viehman, Suzanne J. Hero, Hartline, Dacus, Dreyer, Etc., Dallas, TX, Merideth Cornelia Nagel, Esq., Holland & Knight, Tallahassee, FL, Charles Vincent Peppler, Esq., County Attorney Office, Pensacola, FL, Brian Stephen Duffy, Esq., Brandice Davidson Dickson, Esq., McConnaughhay, Duffy, Coonrad, Etc., Michael E. Ingram, Esq., Ingram & Keri, PA, Brian C. Keri, Esq., Brian C. Keri, PA, John Allan Rudolph, Jr., Esq., John A. Rudolph Jr., PA, John Craig Knox, Esq., Andrews, Crabtree, Knox, Etc., Tallahassee, FL, for Defendants.

## *ORDER ON POST–TRIAL MOTIONS*

HINKLE, District Judge.

The plaintiff in this wrongful death action settled with four defendants, voluntarily dismissed another, and went to trial against another. The verdict was for the plaintiff for substantially less than an offer of judgment that had been made under Florida law by the defendant who went to

trial. Judgment was entered on the verdict. The defendant who went to trial has moved for a setoff based on the proceeds of plaintiff's settlement with other defendants and has moved for attorney's fees and costs based on the offer of judgment. The defendant against whom all claims were voluntarily dismissed also has moved for attorney's fees and costs based on its own offer of judgment. Inexplicably, plaintiff has moved to increase the judgment against the defendant who went to trial to the amount for which plaintiff settled with another defendant, and, if the judgment is so increased, plaintiff seeks an award of attorney's fees and costs based on its own demand for judgment. Plaintiff also seeks to recover taxable costs as the prevailing party.

I deny the motion for setoff of settlement amounts because no such setoff is available under Florida law with respect to non-economic damages, which are apportioned among, rather than awarded jointly and severally against, joint tortfeasors. I grant defendants' motions for attorney's fees and costs based on the offers of judgment but note that, in accordance with the prevailing Florida law on this issue, those fees and costs will be assessed only against the plaintiff (the personal representative of the estate) and not against the survivors for whose benefit the verdict was returned. I deny plaintiff's motion to alter or amend (that is, to increase the amount of) the judgment. I deny plaintiff's request for costs as the prevailing party, based on defendant's offer of judgment and resulting entitlement to attorney's fees exceeding the amount of taxable costs. I grant a separate consented motion to amend the judgment to correct a technical error.

# I

## Background

### The Wreck

This action arose from the death of Christopher Seth Walker, age 17. He was the front seat passenger in a one-vehicle wreck. He was survived by his father, Lindsey Neal Walker, and his mother, Diane Gail Walker.

### The Plaintiff

The case style of the original complaint listed the plaintiffs as "Estate of Christopher Seth Walker, Lindsey Neal Walker, individually and as personal representative of the estate of Christopher Seth Walker, and Diane Gail Walker." (Document 1, some capitalization omitted.) In the body of the initial complaint, the plaintiffs were listed as Lindsey Neal Walker, individually and as personal representative of the estate of Christopher Seth Walker, and Diane Gail Walker. (*Id.*) The case style of the final version of the complaint—the third amended complaint—listed the plaintiff as "Estate of Christopher Seth Walker." (Document 263, some capitalization omitted.) In the body of the third amended complaint, the plaintiff was identified as Lindsey Neal Walker, personal representative of the estate. Lindsey Neal Walker and Diane Gail Walker were identified as survivors. (*Id.*)

Under Florida law, the plaintiff in a wrongful death action is properly the personal representative, on behalf of the estate and survivors. *See* § 768.20, Fla. Stat. (2000).[1] No issue was made of the manner in which the plaintiff was identified in the third amended complaint. In substance, the action was prosecuted by the personal representative (Lindsey Neal Walker), on behalf of the estate and sur-

---

**1.** Citations in this order to the *Florida Statutes* will be to the statutes as in effect in August 2000 when the wreck occurred. There have been no relevant changes.

vivors, as required by applicable law. I treat the plaintiff as Lindsey Neal Walker, personal representative of the estate of Christopher Seth Walker, on behalf of the estate and survivors. References in this order to "plaintiff" are to Linsdsey Neal Walker in this capacity. The only survivors were Lindsey Neal Walker and Diane Gail Walker, who were divorced.

### The Defendants

Plaintiff initially named six defendants in this action: the driver Jerry Edward Bozeman; the driver's father Johnny Edward Bozeman (in whose name the vehicle was titled); a corporation wholly owned by the father (Bozeman Construction Company, Inc.); the vehicle's manufacturer General Motors Corporation; and two firms lower in the chain of distribution of the vehicle, Langdale Chevrolet, Inc. and Robert Hutson Ford, Inc. General Motors, Langdale and Hutson are collectively referred to in this order as the General Motors defendants.

### The Claims

Plaintiff's theories of recovery included the following. Plaintiff asserted that the son (Jerry Edward Bozeman) negligently drove the vehicle, causing the wreck. Nobody seriously disputed this. He was under the influence of drugs and alcohol and drove the vehicle off the road and into various obstructions, finally including a tree.

Plaintiff asserted that the father (Johnny Edward Bozeman) was liable on three distinct theories: first, that the son was driving the vehicle with the father's express or implied consent, rendering the father vicariously liable as the vehicle's owner, based on Florida's dangerous instrumentalities doctrine; second, that the

father negligently entrusted the vehicle to the son; and third, that even if the son was not driving the vehicle with the father's consent, the father negligently allowed the son access to the vehicle, by, among other things, leaving the vehicle readily available to the son, with the keys in it, knowing the son's history of driving under the influence and causing wrecks.

Plaintiff asserted that Bozeman Construction owned or at least controlled the vehicle and negligently allowed the son access to it.

Plaintiff asserted the General Motors defendants were strictly liable because the passenger-side air bag was defective—it failed to deploy—and the decedent would have survived but for the defect.

The damages plaintiff sought were the following. On behalf of the survivors, plaintiff sought to recover damages for mental pain and suffering, as authorized by § 768.21(4), Fla. Stat. (2000). Plaintiff also initially sought to recover for medical and funeral expenses, presumably on behalf of the estate. See § 768.21(6)(b), Fla. Stat. (2000).

### Pretrial Settlements and Dismissals

Plaintiff entered a settlement agreement with the son (Jerry Edward Bozeman) prior to trial under which judgment was entered against the son in the amount of $6,000,000 but no money was paid. Plaintiff settled with the General Motors defendants prior to trial for an amount not disclosed by this record. The record shows no allocation of the General Motors settlement proceeds as between the estate and the survivors.[2] Plaintiff voluntarily dismissed all claims against Bozeman Con-

---

2. The decedent died at the scene of the wreck. Medical expenses presumably were minimal; there may have been no medical expenses at all. There presumably were funeral expenses. The record does not indicate who, if anyone,

paid any medical or funeral expenses, whether any proceeds from the General Motors defendants were allocated to such expenses, or whether such expenses are now a charge against the estate.

struction prior to trial, recovering nothing against that defendant.[3]

### The Trial

Plaintiff went to trial only against the father, Johnny Edward Bozeman. Prior to the commencement of the trial, plaintiff abandoned any claim on behalf of the estate. Plaintiff thus went forward only on the claim for the survivors' pain and suffering damages.

Johnny Edward Bozeman denied liability for his son's operation of the vehicle under any of plaintiff's theories and asserted, in addition, that the decedent was comparatively negligent for failure to wear a seat belt and riding with the son knowing he was impaired. Johnny Edward Bozeman also asserted that plaintiff's damages were caused by the failure of the air bag to deploy, which, Mr. Bozeman said, was an intervening cause relieving him of any liability, because the failure of the air bag as a result of a defect was unforeseeable, thus breaking the chain of causation.

Johnny Edward Bozeman testified that he had explicitly forbidden his son to drive the vehicle. There was evidence from which a jury reasonably could have believed or disbelieved that testimony. The jury returned a verdict finding that Mr. Bozeman (the father) did not give his son express or implied consent to drive the vehicle but that the father had negligently allowed the son access to the vehicle so that he could drive it, even without express or implied consent. This rendered the father liable under the common law of Florida, which holds an owner responsible for negligent operation of a vehicle by one negligently allowed access to the vehicle, even an unknown thief. *See, e.g., Vining v. Avis Rent A Car Sys.*, 354 So.2d 54 (Fla.1977).

The jury apportioned fault for the decedent's death 58% to the son as driver and 42% to the decedent, who rode with the son knowing he was impaired, and who failed to wear his seatbelt. The jury found that a properly functioning passenger side air bag would not have deployed in this wreck, thus rejecting the father's intervening cause theory.

The jury assessed damages of $150,000 for each of the survivors for a combined total of $300,000. Reduced 42%, this resulted in entry of judgment against Johnny Edward Bozeman for $174,000.

## II

### Correction of the Judgment's Technical Defect

The clerk improperly entered the judgment directly in the name of the survivors themselves, rather than in the name of the personal representative on behalf of the survivors.[4] Plaintiff has filed a consented motion to amend the judgment to correct

---

**3.** In the third amended complaint as tendered for filing on October 1, 2002, plaintiff dropped Bozeman Construction Company, Inc., as a defendant, instead asserting that Johnny Edward Bozeman in fact operated Bozeman Construction as a sole proprietorship. The third amended complaint thus sought relief against Mr. Bozeman "individually and doing business as Bozeman Construction Company." Plaintiff dropped all claims against Bozeman Construction as a sole proprietorship prior to trial.

**4.** The clerk's error resulted from use of verdict forms in the names of the survivors individually. With the approval of both sides, and in order to present the contested issues to the jury in as clear and understandable format as possible, the verdict forms were in the names of the survivors themselves. Although the plaintiff was technically the personal representative, this was irrelevant to any issue before the jury, and there was thus no reason to burden the jury with the technical complications. The judgment, however, should have complied with the technicalities, that is, it should have been entered in the name of the actual plaintiff.

this error. Plaintiff's motion, however, asks that the judgment be entered in the name of the "Estate of Christopher Seth Walker." The error will be corrected, but the judgment will be entered in the name of the personal representative, as is proper under Florida law. *See* § 768.20, Fla. Stat. (2000); *Thompson v. Hodson,* 825 So.2d 941 (Fla. 1st DCA 2002). In light of the importance of the precise identity of the plaintiff under Florida law with respect to offers of judgment, as discussed *infra* section IV, the judgment will be made scrupulously accurate.

## III

### Setoff of Settlement Proceeds

■ Johnny Edward Bozeman asserts he is entitled to a setoff against the combined $174,000 judgment to take account of plaintiff's settlement with the General Motors defendants. The short answer is that these are non-economic damages. Under Florida law, no setoff of settlement proceeds may be made against a jury's award of non-economic damages, because each tortfeasor is responsible only for its own appropriate share of such damages. *See Wells v. Tallahassee Mem'l Reg'l Med. Ctr.,* 659 So.2d 249 (Fla.1995).[5] Plaintiff is entitled to recover from Johnny Edward Bozeman his apportioned share of plaintiff's damages as assessed by the jury: 58% of $300,000. Under *Wells,* plaintiff's recovery from General Motors is irrelevant.

## IV

### Fees and Costs Based on the Offers of Judgment

■ By statute, Florida has adopted an offer of judgment system. *See* § 768.79, Fla. Stat. (2001). If a defendant makes an offer that the plaintiff does not accept within 30 days, and if the plaintiff then recovers nothing or an amount at least 25% less than the offer, the defendant is entitled to an award of the attorney's fees and costs incurred after the offer was made. *Id.; see also White v. Steak & Ale, Inc.,* 816 So.2d 546, 549 (Fla. 2002).[6] Conversely, if a plaintiff makes a

---

**5.** Even if the law were otherwise, the right to a setoff here would be far from clear. Mr. Bozeman and General Motors were not joint tortfeasors. *See D'Amario v. Ford Motor Co.,* 806 So.2d 424, 435 (Fla.2001) (treating person who caused wreck and crashworthiness defendant as successive, not joint, tortfeasors). Setoffs generally are available only with respect to joint tortfeasors. *See, e.g., Ellingson v. Willis,* 170 So.2d 311, 316 (Fla. 1st DCA 1964), *overruled on other grounds, Devlin v. McMannis,* 231 So.2d 194 (Fla. 1970); *see also Gordon v. Marvin M. Rosenberg, D.D.S., P.A.,* 654 So.2d 643, 645 (Fla. 4th DCA 1995) (holding that settlement with one defendant could not be setoff from verdict against second defendant where the claims were "separate and distinct," i.e., "involving different elements of damages"). If damages were indivisible, these defendants might nonetheless be *treated* as joint tortfeasors. *See, e.g., Gross v. Lyons,* 763 So.2d 276, 279 (Fla.2000) ("Joint and several liability is also appropriate when the tortious acts of multiple tortfeasors combine to produce a single, indi-

visible injury."); *Maser v. Fioretti,* 498 So.2d 568, 569–70 (Fla. 5th DCA 1986). These issues need not be addressed here, because *Wells* clearly bars any setoff against non-economic damages, even as between joint tortfeasors.

**6.** The statute calls for an award of attorney's fees and costs "from the date of filing of the offer." § 768.79(1), Fla. Stat. (2000). The reference to the "date of filing" cannot have been meant literally; offers are not "filed" unless accepted or unless filing is necessary to support a claim for attorney's fees or costs. *See* § 768.79(4), Fla. Stat. (2000). In a later provision, the statute calls for an award of fees and costs "from the date the offer was served." § 768.79(6)(a), Fla. Stat. (2000) (addressing awards in favor of defendants); *see also* § 768.79(6)(b), Fla. Stat. (2000) (addressing awards in favor of plaintiffs). The reference to the "date of filing" in § 768.79(1) thus presumably means the date of service. In *White,* however, the court said, without analysis, that a defendant is entitled to "re-

demand for judgment that the defendant does not accept within 30 days, and if the plaintiff then recovers an amount at least 25% greater than the offer, the plaintiff is entitled to an award of attorney's fees and costs incurred after the offer was made. Under the definitive law of the circuit, these provisions are fully applicable in federal diversity actions such as the case at bar. *See McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir.2001), *modified on other grounds,* 311 F.3d 1077 (11th Cir. 2002); *see also Tanker Mgmt., Inc. v. Brunson,* 918 F.2d 1524, 1527 (11th Cir. 1990).

Defendant Johnny Edward Bozeman made an offer of judgment under § 768.79 on August 29, 2002, in the amount of $455,000. Defendant Bozeman Construction Company made an offer of judgment under § 768.79 on August 29, 2002, in the amount of $5,000.[7] Plaintiff later dropped his claims against Bozeman Construction, recovering nothing, and plaintiff recovered a verdict against Johnny Edward Bozeman of $174,000, which, even with costs, is below the amount of the offer by far more than 25%. Defendants thus are entitled to an award of attorney's fees and costs under the plain terms of the statute.

Defendants' victory in this regard, however, may be pyrrhic. In *Thompson v. Hodson,* 825 So.2d 941 (Fla. 1st DCA 2002), a defendant in a wrongful death action made an offer of judgment under § 768.79, which the plaintiff rejected. The jury returned a verdict for the defendant, who then sought an award of attorney's fees and costs based on the rejected offer of judgment. The court held the defendant entitled to an award of attorney's fees and costs, but the court held that the fees and costs could not be recovered from the survivors individually, because they were not parties to the action and had no authority to accept or reject the offer of settlement. The court reached this result even though, earlier in the same case, a settlement had been reached with other defendants, under which substantial funds were received and were still being held by the plaintiff (the personal representative of the estate) for the benefit of the same survivors. The court said those settlement proceeds belonged to the survivors and were not available to satisfy claims against the estate. The court said that the fees and costs awarded in favor of the defendant who made the offer of judgment constituted a valid claim against the estate, but the estate had no assets, leaving the

---

cover any attorneys' fees and taxable costs incurred after the plaintiff rejected the offer." *White,* 816 So.2d at 549. Other Florida courts have used the date of service. *See Amisub (Am.Hosp.), Inc. v. Hernandez,* 817 So.2d 870, 872 (Fla. 3d DCA 2002) (concluding, without citing *White,* that fees run from "the date [the party] served the demand"); *Cooper v. Brickell Bayview Real Estate, Inc.,* 711 So.2d 258 (Fla. 3d DCA 1998) (noting conflicting statutory language and holding defendant entitled to fees and costs "from the 'date the offer was served' "). This possible 30-day discrepancy is of no moment in the case at bar. This order provides for an award from the date of service, but the parties will be free to address this issue further if and

when defendants seek a determination of the actual amount of their awards.

7. The offers identified the recipient as the "Estate of Christopher Seth Walker," the same description given for plaintiff in the style of the third amended complaint. *See supra* at 1300–1301. Just as the third amended complaint has been construed as naming the personal representative as the plaintiff (as required to support any award to plaintiff at all), so also the offers of judgment will be construed as naming the personal representative as the recipient. The offers were clearly intended to run in favor of the plaintiff, and had they been accepted, they clearly would have been enforced in favor of the plaintiff.

defendant with an award of fees and costs recoverable from nobody.

In reaching this result, *Thompson* relied heavily on *Johnson v. Schneegold,* 419 So.2d 684 (Fla. 2d DCA 1982). *Johnson* was a wrongful death action in which the jury returned a verdict for the defendant. The defendant sought an award of costs not based on any offer of judgment but simply as the prevailing party. The court held that costs could not be assessed against the survivors for whose benefit the action was brought because no statute authorized such an award. The court characterized this as a "legislative oversight" in the 1972 revision of the wrongful death act, and said this result "does seem unfair." *Id.* at 685. The court nonetheless enforced the statute as written, saying, "this court cannot judicially extend the statute beyond its perimeter." *Id.* In *Thompson,* the court noted that in the 20 years since *Johnson,* the Legislature had made no change.

*Thompson* perhaps could have distinguished *Johnson* as dealing only with prevailing party costs, rather than fees and costs based on an offer of judgment. But there is no defensible theory for treating the two situations differently. If the rationale for disallowing any award against a survivor is that the survivor was not a party to and had no control over the litigation, then the rationale applies equally to prevailing party costs and offer of judgment awards; it is (at least technically) the personal representative, not the survivor, who files and pursues the lawsuit and decides whether or not to settle. If the rationale for disallowing any award against the survivor is simply that the statute does not expressly provide for such an award, the rationale again applies equally to prevailing party costs and offer of judgment costs; the statute by its terms draws no distinction between these two situations.

As an initial matter, one could reasonably take the other side of this issue. As *Johnson* said, it "does seem unfair" that survivors are not responsible for the same litigation consequences visited on other litigants. *Johnson,* 419 So.2d at 685. The statute does not explicitly address this situation, but courts often do and properly should construe statutes in a way that makes sense; statutes never address every conceivable situation that might arise thereunder. And while survivors are not technically parties to a wrongful death action, it is unrealistic to think they have no input into litigation decisions, including whether to file suit in the first instance and whether to accept an offer of judgment. Indeed, in the case at bar, as perhaps in most cases, the personal representative who possesses the technical litigating authority is himself a survivor who now seeks to escape individual liability for fees and costs based on his own decision to reject the offer of settlement.

Still, survivors occupy a different position in wrongful death actions than ordinary plaintiffs. Survivors may have input, and indeed their litigating decisions may often be heeded by the personal representative, but survivors cannot prevent a personal representative from filing a lawsuit, or compel a personal representative to accept an offer of settlement, at least without seeking an order from the probate court. And survivors may not always be on good terms with the personal representative. In the case at bar, for example, the survivors were divorced parents, and while the record reflects no disagreement between them regarding the maintenance of this litigation, it surely would not be unusual if former spouses did not see eye to eye on a matter of this type. At least theoretically, survivor claims could be settled separately; there is no inherent requirement that all claims be settled simultaneously. But apportionment of settlement proceeds is usu-

ally none of the defendant's business, and in any event, in this case and probably in most, the offers of judgment at issue were simply made to the plaintiff, who had the right to accept or reject the offers only in their entirety. Thus, for example, Diane Gail Walker could not have accepted this offer of settlement without the consent of her ex-husband (the personal representative and other survivor), even had she wanted to do so. Assessing fees against a survivor for not accepting an offer of settlement, in circumstances where the survivor could not individually have accepted the offer of settlement even had she wanted to do so, would itself be anomalous.

■ This is, in short, an issue with no easy or obvious solution, at least so long as wrongful death actions must be brought only by the personal representative, as the Florida Legislature has decreed. But whatever ruling might be made as an original matter, the proper result in this court is clear, based on *Thompson* and *Johnson*. The Eleventh Circuit has addressed the binding effect of Florida District Court of Appeal decisions as follows:

> the rule is that, absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently. *See Galindo v. ARI Mut. Ins. Co.,* 203 F.3d 771, 775 (11th Cir.2000); *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.,* 92 F.3d 1110, 1120 (11th Cir.1996); *Williams v. Singletary,* 78 F.3d 1510, 1515 (11th Cir.1996). That rule is, if anything, particularly appropriate in Florida, where the state's highest court has held that "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court]." *Pardo v. State,* 596 So.2d 665, 666 (Fla.1992) (quoting *Stanfill v. State,* 384 So.2d 141, 143 (Fla. 1980)).

*McMahan v. Toto,* 311 F.3d 1077, 1080 (11th Cir.2002). There is no "persuasive indication" that the Florida Supreme Court would decide this issue differently. I thus follow *Thompson* and *Johnson*.

*Thompson* is not meaningfully distinguishable from the case at bar. Here, as in *Thompson*, a defendant made an offer of judgment exceeding by more than 25% the amount the plaintiff ultimately recovered. Here, as in *Thompson*, the defendant is entitled to an award of attorney's fees and costs from the date of the offer. And here, as in *Thompson*, the award of attorney's fees and costs will be recoverable from the estate, but not from the survivors for whose benefit the action was brought.

To be sure, the result seems particularly anomalous here, because the party entitled to an award of fees and costs, Johnny Edward Bozeman, will also be required to pay a judgment that will end up in the pockets of the survivors. Neither *Johnson* nor *Thompson* dealt with precisely this situation; in both of those cases, the jury exonerated the defendant at issue, who thus made no payment for the benefit of the survivors. Under the logic of those decisions, however, this makes no difference.

Indeed, in *Thompson*, a settlement had been entered with another defendant, and the proceeds were still being held for the survivors' benefit. The award of attorney's fees and costs resulting from the offer of judgment could have been satisfied from those settlement proceeds, just as the award of attorney's fees and costs in the case at bar could be satisfied from, or offset against, the $174,000 jury award. But the court in *Thompson* rejected this approach, instead making clear that the award of fees and costs under the offer of judgment statute could run only against

the plaintiff—that is, against the personal representative—not against the survivors, who had no authority to accept or reject the offer of judgment. The award of fees and costs thus could not be recovered from amounts due the survivors as proceeds of the lawsuit. In short, the survivors were not liable for the attorney's fees and costs, and those amounts thus could not be recovered from the survivors' proceeds. Under this reasoning, it matters not whether the survivors' proceeds come from the defendant who made the offer of judgment (as in the case at bar) or from some other defendant (as in *Thompson*).

In short, on any fair reading of *Thompson*, fees and costs based on the offer of judgment can be awarded only against the personal representative and can be recovered only as claims against the estate; the fees and costs cannot be recovered from the survivors or offset against the judgment rendered for their benefit. Defendants are entitled to an award of attorney's fees and costs from the date of their offers of judgment, but the award will run only against the personal representative, not against the survivors, and will not be payable from the survivors' recovery in this litigation.[8]

## V

### *Plaintiff's Motion to Increase the Judgment*

■ Plaintiff asserts that judgment should have been entered against the father, Johnny Edward Bozeman, for $6,000,000, rather than $174,000, because, plaintiff says, the jury's verdict established the father's vicarious liability for his son's negligence, and the amount of the underlying obligation for which the father is vicariously liable is the $6,000,000 agreed to by the son. Plaintiff asserts, in effect, that trying damages to the jury was a useless charade, because the amount of damages was already determined.

This is obviously wrong.

■ First, vicarious liability would have existed under the Florida dangerous instrumentality doctrine only if the father had given the son express or implied consent to drive the vehicle. But the jury found there was no such consent. The jury returned a verdict in plaintiff's favor based only on the father's own negligence in allowing unconsented access to the vehicle. This was direct, not vicarious, liability. The amount of damages caused by the father's direct liability was properly established by this jury in this trial.

■ More fundamentally, the son had no authority, during this litigation, to enter any binding agreement on behalf of his father, or to settle the case on his father's behalf. When the son agreed to settle, he was not acting as the father's agent, he was acting for himself. A defendant with no authority to act on behalf of a co-defendant cannot bind the co-defendant to a settlement. Whatever might be said of

8. Unlike in *Thompson*, where the probate proceeding and wrongful death action had been consolidated with a single trial judge and were both before the court on appeal, in the case at bar I deal only with the wrongful death action. This record does not include the probate record. Given the evidence at trial, however, it appears unlikely that this estate has any significant assets. It thus appears at least somewhat unlikely that determining the amount of fees and costs to be awarded in favor of Johnny Edward Bozeman will be worth the effort. Under this court's bifurcated procedure for determining entitlement to, and then the amount of, attorney's fees, Mr. Bozeman has not yet submitted materials on the amount of his claim. This order will delay the deadlines for submission of such materials until after the conclusion of any appeals, so that the parties and the court will not be required to go through what may be a meaningless effort to determine the amount of such fees.

the father's liability for the son's *driving*, the father clearly was not responsible for the son's *litigating*. The father had no such liability as a matter of contract law (settlements are governed by contract principles, and the son had no authority to bind the father to a contract), or as a matter of collateral estoppel (the $6,000,000 damages figure incorporated into the judgment against the son did not result from actual litigation as required for the collateral estoppel doctrine to apply but instead was a settlement amount, and in any event the father was not a party to the judgment), or under any other theory.

In short, the father had the right to defend the plaintiff's claims against him, and the father exercised that right. In a full and fair trial in which both the plaintiff and the father participated fully, the jury set damages at a combined net total of $174,000. Plaintiff's assertion that he is not bound by the jury's verdict, but instead should recover against this defendant an amount set by agreement with a separate party without the consent of this defendant, makes no sense.[9]

■ From this it follows that plaintiff also is not entitled to recover attorney's fees based on plaintiff's own offer of judgment. Plaintiff offered to accept judgment against Johnny Edward Bozeman in the amount of $4,399,000, recovered $174,000 in damages, and has no claim for attorney's fees based on the offer of judgment.

## VI

### Prevailing Party Costs

Plaintiff has filed an itemized Bill of Costs (document 344) with precisely 100 numbered entries totaling $112,176.37. Defendant Johnny Edward Bozeman has filed detailed objections to many of the itemized amounts. I first determine the amount of costs that would otherwise be taxable, and then consider whether, in light of the offer of judgment, any costs should be taxed at all.[10]

■ The burden is on plaintiff, as the party seeking the award, to support the claim. For entries 1–3, 5, 8–11, 13–17, 19–20, 22–24, 26–28, 30–35, 37, 39–40, 47–48, 51, 54–56, 58, 62–63, 65, 73–75, 77–78, 81–83, 86, and 99, I find that defendant's objections are well founded, and that plaintiff has failed to establish that the amounts to which defendant has objected were reasonably incurred for items covered by 28 U.S.C. § 1920. I overrule defendant's objections to entries 25, 38, 49, 60, 66, 79, 84, 89, 91, 92, 93, 96, and 97. Defendant made no specific objections to the other entries.

A detailed discussion of all of the reasons for these findings would serve no purpose. Five points, however, deserve mention.

■ First, the overwhelming majority of plaintiff's claims, in terms of dollars, consists of expert witness fees. Expert witness fees (above the $40 daily attendance fee applicable to any witness, *see* 28 U.S.C. § 1821) are not recoverable. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*,

9. Another flaw in plaintiff's approach is this. Plaintiff never made his current contention at trial. The issue of damages was submitted to the jury. Plaintiff asked the jury to return a verdict of $12,000,000. Had the jury agreed, plaintiff presumably would not now be saying the jury trial on damages was all a useless charade; plaintiff presumably would want judgment entered for $12,000,000. Plaintiff's

heads-I-win-tails-you-lose approach will not wash.

10. I go through the exercise of determining the amount of taxable costs because plaintiff claims that costs are so high that the offer of judgment did not exceed his recovery (for damages awarded by the jury plus taxable costs) by more than 25%. Determining taxable costs demonstrates that this is not so.

482 U.S. 437, 439, 107 S.Ct. 2494, 2496, 96 L.Ed.2d 385 (1987) ("[W]hen, a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of § 1821(b), absent contract or explicit statutory authority to the contrary."); *Morrison v. Reichhold Chemicals, Inc.,* 97 F.3d 460, 463 (11th Cir.1996).

Second, although defendant has asserted that plaintiff failed to establish that some amounts were necessarily incurred in this action, plaintiff's attorney's verification of the Bill of Costs did so certify. Details were sometimes missing, but a general assertion of necessity was present. Objections based solely on the absence of sufficient evidence of necessity have been overruled.

■ Third, claimed witness fees nominally exceeding the statutory $40 attendance fee have been approved, usually in the total amount of $50, because subpoenaed witnesses properly must be paid not only the $40 attendance fee, but also mileage. Attorneys preparing for trial need not measure the precise mileage from a witness's home to the courthouse; they may reasonably make a mileage payment (such as $10) deemed adequate, so that their witnesses in fact show up for trial. Absent obvious error or abuse, amounts actually paid on this basis (and certified by the attorney as necessary) properly may be taxed. The amount paid to Jerry Edward Bozeman for mileage apparently was higher, but he was not local, and the record establishes no basis for challenging the claimed amount.

■ Fourth, I need not address the issue of whether the mediator's fee in a court-ordered mediation is properly taxable as a general matter, because I would not tax the fee paid by plaintiff in this case in any event, as a matter of discretion. It is clear from the offers of judgment and from the parties' respective positions on damages at trial that plaintiff's settlement position was unrealistic. With an offer in hand several times higher than was recovered, plaintiff ought not be able to tax the cost of the mediation, which was part of an overall settlement process in which defendant plainly tried, but plaintiff refused, to settle on reasonable terms.

■ Fifth, for many of the remaining entries, plaintiff failed to provide information sufficient to support a finding that the amount at issue was taxable. In other instances, plaintiff lumped nontaxable amounts with amounts that might have been recoverable, making a determination of the taxable amount impossible. Because the burden is on plaintiff to support his claim, I have rejected entries with these defects.

Based on these rulings, taxable costs would total, at most, the sum of $20,508.56.[11]

I conclude, however, that even this amount should not be taxed. Taxation of costs under 28 U.S.C. § 1920 is not mandatory; district courts retain at least some discretion in the matter. *See* 28 U.S.C. § 1920 (stating that the court "may" tax enumerated costs); Fed.R.Civ.P. 54(d)(1)

---

**11.** This amount includes costs incurred after Johnny Edward Bozeman's offer of judgment. Under Florida law, such costs are not recoverable. *See White,* 816 So.2d at 549. Even if this issue were governed by federal law, *see* 28 U.S.C. § 1920, rather than by Florida law, the result would be the same. This is so because even under federal law, the court has discretion not to tax costs in appropriate cir-

cumstances. As a matter of discretion, in the specific circumstances of this case, I would choose not to tax costs incurred by the plaintiff after receipt of defendant's offer of judgment. But in light of the decision not to tax costs at all, as discussed below, I have not calculated the amount of costs incurred after the making of the offer of judgment.

(permitting costs "as of course to the prevailing party unless the court otherwise directs"); *Viverette v. Lurleen B. Wallace State Jr. Coll.*, 587 F.2d 191, 194 (5th Cir.1979) (observing that trial court has "broad discretion" in awarding costs pursuant to § 1920); *see generally* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 3d* § 2668 (1998 & Supp.2002). Given plaintiff's rejection of Johnny Edward Bozeman's offer of judgment, which caused Mr. Bozeman to incur attorney's fees exceeding the costs that would otherwise be taxed in favor of plaintiff, and given the likelihood that those fees will never be collected, *see supra* section IV, I conclude that it would be inequitable to tax costs in favor of plaintiff, and I thus decline, as a matter of discretion, to do so.[12]

Moreover, even if these costs were taxed, it would make no difference. Johnny Edward Bozeman is entitled, based on his offer of judgment, to an award of fees and costs against plaintiff. That award in Mr. Bozeman's favor will exceed plaintiff's taxable costs. Although Mr. Bozeman cannot recover his offer-of-judgment award from the survivors, he *can* recover the award from the plaintiff (that is, from the personal representative or, in effect, from the estate). The Florida First District Court of Appeal effectively recognized this in *Thompson v. Hodson*, 825 So.2d 941 (Fla. 1st DCA 2002), by holding that an offer-of-judgment award to the defendant in a wrongful death action constitutes a valid claim against the estate. Similarly, it is the plaintiff, not the survivors, who would recover taxable costs as the prevailing party.[13] Mr. Bozeman thus would be entitled to recover his offer-of-judgment fee and cost award from the proceeds of any prevailing-party cost award in favor of the plaintiff. Because the parties to the offer-of-judgment fee and cost award, on the one hand, and the prevailing-party cost award, on the other hand, are identical, the amounts properly should be offset, leaving plaintiff with no award.[14]

12. The conclusion that the fees incurred by Johnny Edward Bozeman after the offer of judgment exceeded taxable costs is based on the court's own knowledge of the amount of time obviously devoted to the matter and the fees ordinarily and reasonably charged for such services. *See Davis v. National Med. Enters.*, 253 F.3d 1314, 1322 n. 12 (11th Cir. 2001) ("a district court is itself an expert on the question of fees, and may consider its own knowledge and experience in making a fee award") (citing *Norman v. Hous. Auth.*, 836 F.2d 1292, 1304 (11th Cir.1988)). If plaintiff contends the fees actually and reasonably incurred by Johnny Edward Bozeman after the offer of judgment did *not* exceed $20,508.56, plaintiff may raise the issue within 10 days by motion for reconsideration of this order, and such proceedings as may be appropriate will be conducted on this issue.

13. *See* § 768.26, Fla. Stat. (2001) ("Attorney's fees and other expenses of litigation *shall be paid by the personal representative* and deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them, but expenses incurred for the benefit of a particular survivor of the estate shall be paid from their awards") (*emphasis added*). It is the personal representative—as the named plaintiff and further as the party who pays the expenses in the first instance—in whose name any award of costs would be entered, just as, for example, a named defendant who prevails in an ordinary tort action recovers costs in the defendant's name, even if in fact the costs have been borne by (and as a practical matter any cost award will inure to the benefit of) an insurer. *See, e.g., Royster v. Van Der Meulen*, 564 So.2d 1204, 1205 (Fla. 1st DCA 1990).

14. If Johnny Edward Bozeman pursues his claim for an affirmative judgment for fees and costs, notwithstanding the determination that he cannot recover such fees and costs from the survivors, then any such award will be reduced by the amount of taxable costs incurred prior to the offer of judgment that otherwise would have been taxed in favor of plaintiff. The decision not to tax such costs results solely from the offer of judgment. As

In sum, no costs will be taxed in favor of plaintiff as the prevailing party.

## VII

### *Appeal Status*

The original judgment against defendant Johnny Edward Bozeman was docketed on October 30, 2002. (Document 322.) On November 4, 2002, defendant filed its motion for a setoff, in effect a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59. (Document 327.) On November 6, 2002, plaintiff filed his motion to alter or amend the judgment to correct the naming of the plaintiff, citing Federal Rule of Civil Procedure 60. (Document 329.) On November 8, 2002, plaintiff filed a motion for a new trial under Federal Rule of Civil Procedure 59. (Document 335.) By order docketed November 18, 2002, the motion for new trial was denied. (Document 341.) On December 16, 2002, plaintiff filed a notice of appeal from the judgment docketed October 30, 2002, noting that the motion for new trial had been denied on November 18, 2002. (Document 347.)

The notice of appeal does not deprive this court of jurisdiction to enter this order. Defendant's motion for a setoff (document 327) and plaintiff's motion to alter or amend (document 329) remained pending when plaintiff filed the notice of appeal. The effect of a notice of appeal filed under these circumstances is explicitly addressed in Federal Rule of Appellate Procedure 4(a)(4):

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment altered or amended upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(iii) No additional fee is required to file an amended notice.

Fed. R.App. P. 4(a)(4)(A).

Because defendant's motion for setoff and plaintiff's motion to alter or amend remained pending, plaintiff's notice of ap-

---

set forth in the text, plaintiff is not entitled to recover such costs affirmatively, either based on the discretionary decision not to tax them, or because they would in any event be subject to an offset exceeding the amount of the costs. But the amount of any offer-of-judgment fee and cost award in favor of defendant should be reduced accordingly.

peal as filed on December 16, 2002, was premature. The notice will become "effective" only "when the order disposing of the last such motion is entered." Fed. R.App. 4(a)(4)(B)(i). This order disposes of the last such motion. The clerk of the court thus will be directed to continue processing the notice of appeal.

It bears noting, however, that, pursuant to this order, the original judgment will be vacated, and an amended judgment will be entered. Plaintiff presumably will challenge the amended judgment. In order to do so, plaintiff will be obligated to file an amended notice of appeal within the appropriate period. *See* Fed. R.App. P. 4(a)(4)(B)(ii).

### Conclusion

For these reasons,

IT IS ORDERED:

1. Plaintiff's motion (document 333) for entry of judgment against defendant Johnny Edward Bozeman in the amount of plaintiff's settlement with defendant Jerry Edward Bozeman is DENIED.

2. Defendant Johnny Edward Bozeman's motion for setoff (document 327) is DENIED.

3. Defendant Johnny Edward Bozeman's motion for attorney's fees and costs (document 326, as supplemented by document 328) is GRANTED IN PART. It is hereby determined that Johnny Edward Bozeman is entitled to recover from plaintiff, but not from the survivors, attorney's fees and costs reasonably incurred from August 29, 2002, forward.

4. Defendant Bozeman Construction Company's motion for attorney's fees and costs (document 306) is GRANTED IN PART. It is hereby determined that Bozeman Construction Company is entitled to recover from plaintiff, but not from the survivors, attorney's fees and costs reasonably incurred from August 29, 2002, forward.

5. The procedures set forth in Rules 54.1 and 54.2 shall govern further proceedings to determine the amount of fees and costs to be awarded under paragraphs 3 and 4 above, except that, in light of the certainty that an appeal will take place (a notice of appeal already having been filed), the deadline for defendants to file and serve the affidavits required by Rule 54.1(E) is 30 days after (a) if all appeals are dismissed, the date of the last dismissal, or (b) if any appeal is not dismissed, the date of issuance of the mandate of the United States Court of Appeals for the Eleventh Circuit. No motion for determination of the amount of fees or costs shall be filed prior to disposition of all appeals as defined in the preceding sentence. No amount will be awarded for attorney's fees that were not the subject of an appropriate filing under Local Rule 54.1(B).

6. Plaintiff's motion for attorney's fees (document 332) is DENIED.

7. Plaintiff's Bill of Costs (document 344), treated as a motion to tax costs, is DENIED.

8. Plaintiff's consented motion (document 329) to alter or amend the judgment is GRANTED IN PART. The judgment docketed October 31, 2002 (document 321) is VACATED. The clerk is directed to enter an amended judgment with the same case style as this order stating,

Plaintiff Lindsey Neal Walker, as personal representative of the estate of Christopher Seth Walker, deceased, shall recover from defendant Johnny Edward Bozeman the sum of $87,000 for the benefit of Lindsey Neal Walker individually (as a survivor of Christopher Seth Walker) and the sum of $87,000 for the benefit of Diane Gail Walker individually (as a survivor of Christopher Seth Walker), for a total of $174,000. The court reserves jurisdiction to award attorney's fees and costs in favor of defen-

dants Johnny Edward Bozeman and Bozeman Construction Company, Inc., against plaintiff Lindsey Neal Walker, as personal representative of the estate of Christopher Seth Walker, deceased. All claims against Bozeman Construction Company, Inc., and all other claims among all parties, are dismissed with prejudice.

The judgment to be entered by the clerk in accordance with this paragraph is intended as a final judgment disposing of all remaining claims among all remaining parties under Federal Rule of Civil Procedure 58.[15]

9. The case style is amended to the case style set forth on the first page of this order.

---

15. Final judgments already have been entered, under Federal Rule of Civil Procedure 54(b), with respect to plaintiff's claims against Jerry Edward Bozeman and the General Motors defendants.